## HONORA EVANS v. WILLIAM R. STUHRBERG.

*Void note—Fraudulent transfer—Remedy of innocent purchaser.*

An *innocent* purchaser of a Bohemian oat note, from whom the holder concealed its true consideration, and to whom he warranted it to be a good note, need not collect it of the maker, though able to do so, but can recover the value of the note, or the money paid for it, from such holder.

Error to Livingston. (Newton, J.) Argued November 5, 1889. Decided November 15, 1889.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Rollin H. Person,* for appellant, contended:

1. The plantiff being a *bona fide* purchaser, the fact that the note was given for "Bohemian Oats" in no wise affected its validity in her hands; citing *Davis v. Seeley,* 71 Mich. 209.

2. A warranty that a note is good has been held as only a warranty that it is collectible; citing 2 Pars. Notes & B. 141.

3. One can only sue for a wrong from which he has suffered injury; citing *Raynsford v. Phelps,* 49 Mich. 315; *Post v. Campau,* 42 Id. 96.

*Dennis Shields* and *B. T. O. Clark,* for plaintiff, contended for the doctrine stated in the opinion.

MORSE, J. The plaintiff brought suit in the Livingston
73 MICH.—10.

county circuit court, alleging, in substance, that the defendant sold her a note for $200, executed by one Charles E. Holdridge, representing to the Rev. James G. Doherty, who was acting as her agent in the purchase of the note, that the note was good and collectible, and that Holdridge was worth about $5,000, mentioning the property which said Holdridge owned; that she relied upon such warranty in the purchase of the note; that said note was not good or collectible, and that said Holdridge was irresponsible and financially worthless; that the defendant represented that the note was given for a good, legal, and valuable consideration, when in fact it was a Bohemian oat note, and worthless, and of no value; that she demanded payment of said note from the maker, Holdridge, who refused payment; that afterwards she caused a tender of the note to be made to defendant, and demanded payment of the same, or the refunding of the money paid by her to him for said note, which demand was refused by the defendant.

The defendant pleaded the general issue, and gave notice under said plea that after the note had become due the maker, Holdridge, had offered and tendered the plaintiff as payment or part payment of said note a horse of the value of $200, which plaintiff refused to accept. The plaintiff had judgment in the court below.

The testimony on the part of the plaintiff was to the effect that the defendant offered to sell the note to Mr. Doherty, who was a Catholic priest, then stationed at Brighton. Father Doherty, as he is called in the record, had no money at the time, but thought perhaps plaintiff, who was his housekeeper, might buy the note. He spoke to her about it, and acted as her agent in the transaction. He testified that defendant told him that the note was all right, and represented that Holdridge was good, and that, after all his debts were paid, he would have at least

$5,000 left, and that the note would not have been pur-chased except for these representations of defendant. Testimony was also given tending to show that the note was a Bohemian oat note of the usual kind afloat in this State, and accompanied by the usual bond, which had not been performed, and that the representations as to the financial worth of Holdridge were untrue. Plaintiff paid $195 for the note. Defendant admitted that he knew the note was given for Bohemian oats when he sold it to Father Doherty, but testified that Holdridge told him that he went into the transaction for speculation, and that he was going to make money out of it—

"Right immediately to pay it. He said, 'You will certainly have it paid when it is due.'"

This was before he bought the note, and he says:

"I would not have bought the note except for Holdridge's assurances, because it was a Bohemian oat note."

Defendant paid $180 for the note. He also testified that Holdridge told him that he would be pleased to have him buy it, because defendant lived near by, and he could pay it at home. He admits that he told Father Doherty that the note was good, and that Holdridge was good for it. Did not tell him it was a Bohemian oat note. Did not tell him that Holdridge would have $5,000 left when his debts were paid. Evidence was also given on the part of defendant tending to show that the maker of the note was financially responsible for the amount of it. It was shown that plaintiff made no effort to collect the note of Holdridge after the demand and refusal of payment.

The counsel for the defendant assigns as the principal error in the case that the court permitted testimony to be given showing the note to have been given for Bohemian oats, and instructed the jury that if the

note was a Bohemian oat note it was not a good, but a void, note. It is argued that the plaintiff, having no knowledge that the note was given for Bohemian oats, and purchasing it before due for value, was a *bona fide* holder of the note, and could collect it; that the maker never declined to pay it on the ground that it was a Bohemian oat note, and never claimed that as a defense; that the note was a good note as soon as it passed into plaintiff's hands, and that, therefore, the fact that it was a Bohemian oat note in no wise affected its validity in her hands, and that such fact was entirely immaterial and irrelevant; that, therefore, the case should have been submitted to the jury solely upon the maker's financial responsibility.

We think the circuit judge fairly submitted the case to the jury, and that he did not err in admitting the testimony as to the consideration of the note. The court instructed the jury that if Holdridge told defendant the note was all right, and that he would pay it when it was due, this would estop Holdridge from making any defense to the note, and that it would be a good note so far as its being given for Bohemian grain was concerned. This was as favorable as the defendant could ask, under the law as laid down by this Court in reference to these notes.

This note was void between the parties on the ground of public policy. It was also void and dead in the hands of defendant, as he had knowledge of the fraudulent transaction, unless something had occurred between him and the maker which estopped the latter from pleading its invalidity. Holdridge denied telling defendant that the note was all right, or that he would pay it, and the jury, it is admitted, upon this conflict in the testimony, found against the defendant. Then the case stands like this: When defendant presented this note to Father Doherty he knew it was a void note; that he could not collect it.

When he told Doherty that the note was good, and thereby induced him to purchase it for plaintiff, he cannot be permitted by the law to take advantage of his own fraud, or thus to evade the law which seeks to discourage and prevent these illegal transactions. If this note was made good in the hands of the plaintiff because she was an innocent purchaser, she was made such innocent purchaser by the fraud of the defendant, who concealed from her not only the original consideration of the note, but warranted it to be a good note when he knew it was not a valid one, except as it might be made so by the success of his deception and falsehood. The law in such a case will not force the plaintiff to collect the note against the maker, though she may be able to do so, nor allow the defendant to reap a profit from his fraud, as well as to galvanize by such fraud a dead note into life. This would not be in accord with that public policy which forbids the contract in its inception, and which endeavors to prevent those engaged in it, or having guilty knowledge of it, to profit thereby.

The commercial law in favor of innocent purchasers was intended for the benefit of the innocent purchaser, and for the security of those handling commercial paper in the due and honest course of business. It was not intended as a shield to those fraudulently putting in circulation illegal or void notes, or passing them upon innocent purchasers by fraudulent or false representations or warranties. And it is much better, if it can be done, that the innocent holder shall recover its value, or the money paid for it, from such false warrantor, than that he shall undertake to recover it from the maker.

There is no error to be found in the record, and the judgment will be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.